## WATSON v. HAMRICK.

### 3 Div. 178.

Supreme Court of Alabama.

Jan. 21, 1937.

Thomas & Thomas and Wm. J. Fuller, all of Montgomery, for appellant.

Alex C. Birch and Walter J. Knabe, both of Montgomery, for appellee.

BOULDIN, Justice.

This cause comes to us on an agreed statement of facts.

A recital of the controlling or pertinent facts appears necessary to an understanding of the issues between the parties.

J. M. Allen died testate in June, 1933, being survived by his wife, Mary Lou Allen, a non compos mentis. His estate consisted of realty, to wit, a storehouse, six other houses, and a cemetery lot, all of about the value of $9,000, and of personal property, the main item being stock in the Alabama Power Company of the face value of $2,500.

By his will, J. M. Allen, in item 2, devised to Mrs. Bessie Lee Watson one house and lot in fee simple. Item 3 reads:

"I will, devise and bequeath all of the rest and residue of my property, both real, personal and mixed of which I may die seized and possessed of to my wife, May (Mary) Lou Allen to be owned, used and enjoyed by her during her natural life, and at her death, all of said property shall go to and become the absolute property of Mrs. Bessie Lee Watson. I am making this bequest on account of the kindness shown my wife by the said Mrs. Bessie Lee Watson, and on account of her willingness to serve her at all times."

The will nominated Mrs. Watson as executrix, without bond, or duty to report to any court, unless called upon by written request of the wife of the probate judge to require bond.

William G. Boyd was promptly appointed guardian of the estate of Mary Lou Allen, the widow. He contested the will on her behalf. The will was admitted to probate. The administration of the estate of J. M. Allen, deceased, and the administration of the guardianship were removed to the equity court.

In December, 1934, there was pending a partial settlement of the J. M. Allen estate, with exceptions to a report of the register filed by said guardian. A settlement of the guardianship was also pending.

After prolonged negotiations, a consent decree, quite inclusive in scope, was entered by Judge Leon McCord.

The report of the register on partial settlement of the J. M. Allen estate was confirmed. A final settlement of the guardianship to date was made and Mr. Boyd, the guardian, was discharged. Frank Hamrick was appointed as a succeeding guardian.

The decree, headed "Decree * * * Construing the Will of J. M. Allen, deceased," further recites:

"All the parties to this cause further submit to the Court a petition for direction for the guardian of Mary Lou Allen, non compos mentis, and for a decree for her future support, for a final construction of the will with reference to the non compos mentis, and for a sale and distribution of all personal property belonging to the estate of J. M. Allen, deceased."

Several decretal orders then follow—among them:

"* * * That all the personal property of said estate is the property of the said Mary Lou Allen, non compos mentis, save and except the Alabama Power Company stock. The moneys now in bank to be used, as much as may be necessary, to pay taxes and court costs, the remainder to be paid over for the non compos mentis to her guardian.

"* * * That Bessie Lee Watson, Executrix of the last will and testament of the said J. M. Allen, deceased, shall forthwith turn over to the guardian of the non compos mentis, all of the personal property of the said estate of every kind and description whatsoever, save and except the Alabama Power Company stock, and the said Guardian, Frank Hamrick, is hereby authorized to sell all such personal property so delivered to him, except that part which shall be needed by the non compos mentis.

"* * * That all the real property of said estate as described and defined in the will of said J. M. Allen, deceased, shall be held in trust by Bessie Lee Watson, executrix of the will of J. M. Allen, deceased, through and during the life of Mary Lou Allen, non compos mentis, and at her death it shall descend in fee simple to Bessie Lee Watson, as provided in said last will and testament of the said J. M. Allen, deceased.

"* * * That all the rents and proceeds derived from said real property shall be paid over twice each month, after deducting reasonable amount for repairs, taxes and insurance, to the Guardian of Mary Lou Allen, non compos mentis, for the maintenance and support of said Mary Lou Allen, non compos mentis.

"* * * That the Alabama Power Company stock personal property of the estate of J. M. Allen, deceased, shall be held in trust by the said Bessie Lee Watson, Executrix of the last will and testament of the said J. M. Allen, deceased, and pending the further orders of this Court. The proceeds and interest derived from said Alabama Power Company stock shall be paid over to the Guardian of Mary Lou Allen, non compos mentis, for the support and maintenance of the said Mary Lou Allen, non compos mentis. That said Alabama Power Company stock so held in trust by the said Bessie Lee Watson, executrix, shall never be sold unless the said estate decreases to such an extent as that there is not enough income to support the said Mary Lou Allen, non compos mentis. In that event, and upon the Court's knowledge of the same, the said Alabama Power Company stock shall be sold and the proceeds used for the support and maintenance of said Mary Lou Allen, non compos mentis. In the event it is not necessary to sell the said Alabama Power Company stock as herein provided, then upon the death of said Mary Lou Allen, non compos mentis, said stock shall become the property of Bessie Lee Watson."

The executrix and the new guardian proceeded under this decree until the death of the ward, Mary Lou Allen, January 10, 1936.

In March, 1936, Mr. Hamrick filed his accounts for a final settlement of his guardianship. These accounts, agreed to be correct, disclosed that all the funds coming to his hands as guardian were expended in the support and maintenance of the ward, and the guardian had advanced further funds, so that the estate of the ward was indebted to him a balance of $88.05.

This report for final settlement disclosed unpaid items theretofore accruing as follows:

$250.00 attorneys' fee incurred by former guardian in contesting the will.

$150.00 attorneys' fee for services rendered on behalf of the estate of the ward in former guardianship.

$ 10.00 for premium on bond of former guardian.

$ 89.74 balance due Mr. Boyd, former guardian, on settlement of his guardianship.

$ 47.50 probate court costs.

$ 15.75 state and county taxes, 1935.

$ 9.50 city taxes 1935.

These items, including balance $88.05 above, and aggregating $660.57, are admitted to be correct in amount and unpaid.

In connection with his report for final settlement, the guardian, Mr. Hamrick, filed his petition alleging that these demands, as well as the costs and attorneys' fees accruing on his guardianship, were proper charges on the stock in the Alabama Power Company under the trust created by the decree of December, 1934, above set out, and praying that said stock be sold under orders of court to pay these claims.

In the decree of December, 1934, the fee of $250 for contesting the will was decreed a proper allowance "to be paid out of the estate of Mary Lou Allen, non compos mentis." Likewise decreed the attorneys' fee of $150 a proper allowance for services rendered the former guardian "to be paid * * * out of the estate of Mary Lou Allen, non compos mentis."

It is agreed that Mary Lou Allen had a separate estate, not derived through the will of her husband, consisting of a five-room cottage occupied by her as her home to the date of her death. The value of this property was variously estimated at $600 to $1,500.

The agreed record an appeal stipulates:

"It is further agreed between the parties hereto that the proposition to be decided by the Supreme Court is whether or not under the decree of Judge McCord, these bills and items must be paid out of the estate; that is, the separate estate of Mary Lou Allen, deceased, or whether the Alabama Power Company stock held in trust by the executrix of J. M. Allen, deceased, under the terms of the decree rendered by Judge McCord, should be sold, and the proceeds of such sale be used in the payment of these bills."

In the decree of Judge Walter B. Jones, from which the appeal is taken, there appears the following:

"The Court is of opinion, and so holds, that the decree rendered by this Court on the 19th day of December, 1934, intended that Mary Lou Allen, non compos mentis, should be supported from the estate of J. M. Allen, deceased, and that the Alabama Power Company stock referred to in said decree is a trust for said purposes.

"The Court is further of the opinion that when the decree refers to the estate of Mary Lou Allen, it does not mean the separate estate of Mary Lou Allen, but means the estate of Mary Lou Allen as created from the estate of J. M. Allen. * * *

"The Court is further of the opinion that the items listed as unpaid should be paid from the estate of J. M. Allen, and that costs of the guardianship, including costs of final accounting, and the attorneys' fees for services rendered by attorneys during the guardianship and settlement should also be paid from the estate of J. M. Allen."

It was decreed accordingly.

Appellant stresses the terms of the decree of Judge McCord declaring the personalty of the estate of J. M. Allen the property of Mary Lou Allen, but expressly excepting the Alabama Power Company stock, and designating this stock as "personal property of the estate of J. M. Allen, deceased," to be held in trust under which it was to be sold only in the event other resources were insufficient for the maintenance and support of the invalided wife, and, if not sold for such purpose, this stock should become the property of Mrs. Watson.

A careful study of the entire record leads us to the following observations and conclusions: The will of decedent, the spirit and intent whereof were to be effectuated by the decree of December, 1934, discloses a primary purpose to provide for the proper care, maintenance, and support of the wife so long as she lived.

The bequest of Mrs. Watson was expressly out of gratitude for her past ministries to the wife, and her willingness to continue such ministries. Great confidence was reposed in relieving her from giving bond as executrix, but not such confidence as would endanger the interests of the helpless wife. The requirement of bond on her request was significant.

The devise and bequest of real and personal property in bulk to be "owned, used and enjoyed by her during her natural life" provoked an inquiry whether merely the income and profits from these proper-

ties were to be devoted to the maintenance of the wife, or whether the corpus of the personalty, or of both real and personal property, should be devoted to that end, if necessary.

The will had not in express terms created a continuing trust in the executrix other than such as pertains to the office. A guardianship had intervened, but the executrix still retained the personalty as well as real estate, paying over to the guardian the income, etc.

One purpose of the decree of December, 1934, was to segregate the properties which should be considered absolutely those of the wife, and turned over to the guardian. The personalty of the J. M. Allen estate, other than the Alabama Power Company stock was so decreed. This was of small value, as it appears only $70.50 was derived from sales by the new guardian.

As to the real estate, the decree in effect awarded the wife a life estate, and to Mrs. Watson the remainder in fee. Such life estate was to be held in trust, a continuing trust, not ordinarily attaching to the office of executrix. This feature of the decree served the double purpose of naming some one to look after and rent the properties to provide an income to maintain the wife, and at the same time enable Mrs. Watson, through such management, to lessen the burden on the Alabama Power Company stock, in which she had a residuary interest.

Approaching the provisions of the decree touching this stock in the light of all the facts, it is manifest another and distinct trust was created, differing somewhat from the disposition made of other personal properties, as well as of the real estate.

While still held and to be accounted for as personalty of the estate of J. M. Allen, as distinguished from the estate of the wife in other personalty, it was held subject to further orders of the court, subject to sale only when made known to the court to be necessary for the continued support of the wife. In a sense this stock was set apart as a reserve fund to protect the wife in event of shortage of other resources, and to be conserved, subject to this first charge, for the residuary legatee.

But what of these other burdens upon the ward's estate which, if met out of other resources, would have so depleted same that the further maintenance of the ward would have called for a speedy subjection of the stock?

The attorneys' fees, chief items in the account, were especially recognized in the decree as just charges on the ward's estate.

The balance then found due the former guardian had been theretofore advanced for the proper maintenance of his ward.

Nothing in the decree imports a purpose to postpone the payment of these demands from available funds coming to the hands of the new guardian.

As for the cottage owned by the ward, it was her home. The entire subject-matter involved in the decree related to the estate of J. M. Allen, the fixing of the interests or estates of Mrs. Allen and Mrs. Watson therein.

These charges, except for taxes, grew out of and were incident to the administration of such estate.

The assumption that Judge McCord had in mind burdening the home of the ward with these charges, selling the roof over her head, necessitating a further burden on her interest in the husband's estate to provide another home, will not be indulged.

We concur in the views of Judge Jones that in making these attorneys' fees charges on the estate of the ward, the decree meant the estate of the ward dealt with, defined and set up in the decree, the estate arising from the will of her husband.

Appellant cannot complain that the guardian did not pay these demands out of the funds which came to his hands, rather than use them in the maintenance of the ward. Appellant was thus given the opportunity to derive, if practicable, an income from the stock and rents of realty to take care of all charges, and save the corpus of the stock for herself.

The decree is quite specific in requiring the "proceeds" of the stock as well as the "interest" derived therefrom to be paid over to the guardian, to become part of her estate, when required for her proper support and maintenance.

As the decree is punctuated in the record, it would appear the trust created in this stock should continue only "pending further orders of this court." If construed to mean "pending the further orders of

432

this court, the proceeds and interest derived" from the stock shall be paid over to the guardian, it still appears the court retained a control over this stock for such future decretal orders as occasion should demand. Further provisions are to be construed as defining the ultimate disposition, in case no further orders are made.

The death of the ward in no wise ended the charges properly decreed against the stock.

The items of taxes accrued against the separate property of the ward, her home. We are not dealing, however, with the obligation of the owner to state, county, or city, nor tax liens on the property. A home and shelter may properly be deemed a part of the support and maintenance of the wife under conditions disclosed by this record. The protection of such home against tax sales may well be regarded in the same light.

We find no error in the decree.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.